# Jordan *et al. versus* McClure.

By an instrument made in 1819, James Nicholson conveyed certain land to Pompey, Tamer and Betty, " for their own use during their natural life, and afterwards to their lawful, if they have any, and if not lawful issue remains after their death, the above-described land shall revert to the lawful heirs of James Nicholson, and the said Pomp, Tamer and Betty are to take possession of said tract of land immediately after the decease of the said James Nicholson and Mary his wife, and not before, then to have full possession, one or more of them, during their natural life and the life or lives of their lawful issue." By will in 1828 he devised the same tract, after death of testator's widow, to the same persons, " to stand sure to them and their heirs with all the buildings and improvements thereon, and when any one dies the living ones must heir their share of all property I give them." *Held*, (1.) That if the instrument of 1819 was a testamentary paper, it was revocable and revoked by the will under which the devisees took an estate in fee as tenants in common with an executory devise over to the longest liver. Turner v. Scott, 1 P. F. Smith 126, recognised. (2.) That if it was an irrevocable grant it conveyed to the grantees an estate for their lives, with remainder to their chil-

[Jordan *et al. v.* McClure.]

dren for their lives, but as the remainder was contingent, there being no children in being, the reversion in fee vested in the grantor. (3.) In a deed the word " issue" will not supply the want of the word " heirs."

November 17th 1877. Before SHARSWOOD, MERCUR, GORDON, PAXSON, WOODWARD and STERRETT, JJ. The Chief Justice did not sit in this case, having been concerned therein as counsel.

Error to the Court of Common Pleas of *Beaver county :* Of October and November Term 1876, No. 262.

This was originally an action of ejectment in the court below, between Joshua R. G. Jordan, Emanuel Patterson, Ruth Ann Patterson, Martha M. Jordan, and Mary E. Jordan, plaintiffs, and William McClure, defendant, in which the parties agreed upon the following case stated :—

And now, to wit: October 4th 1875, it is hereby agreed, by and between the parties to the above suit, that the following case be stated for the opinion of the court in the nature of a special verdict.

James Nicholson in his lifetime, in the year 1819, was seised in his demesne as of fee of and in one hundred and twenty acres and one hundred and thirty perches of land in the township of Big Beaver, in said county of Beaver, and then had in his service three persons, named respectively, Pompey Frazier, Tamer Frazier and Betty Mathers, whom he claimed as his slaves.

By a deed dated the 6th day of May 1819, entered for record on the 19th May, James Nicholson and Mary his wife, conveyed said Land to said Pompey, Tamer and Betty, subject to the following restrictions and limitations, viz.: " To hold the said parcel or lot of land for their own use, during their natural life and afterwards to their lawful, if they have any, and if not lawful issue remains after their death, the above-described lands shall revert to the lawful heirs of James Nicholson, and the said Pomp, Tamer, and Betty Mathers are to take possession of said tract of land immediately after the decease of the said James Nicholson and Mary his wife, and not before, at which time they shall be free from servitude, then to have full possession one or more of them during their natural life and the life or lives of their lawful issue, which land by them or any one or more of their lawful issue shall not be allowed to rent or dispose of in any way or manner whatever, to have and to hold the above-described tract of land ; and the said James Nicholson and Mary his wife doth bind themselves, their heirs and assigns to warrant and defend said lot or parcel of land against their heirs, executors and administrators, and all persons claiming or to claim under the said Pomp, Tamer and Betty Mathers, agreeably to the above considerations and restrictions."

From the day of the date of the above-mentioned deed until January 9th 1829, when he died, James Nicholson and his wife Mary continued in possession of the said land, and the three colored persons, Pomp, Tamer and Betty continued in the service of, and

[Jordan *et al. v.* McClure.]

were claimed and held by James Nicholson as his slaves. By last will and testament, since his decease duly proved, and remaining in the register's office at Beaver, bearing date the 10th day of October A. D. 1828, registered in Will Book A, p. 250, James Nicholson, after devising all his said lands, including the one hundred and twenty acres and one hundred and thirty perches, in the above-mentioned deed described, to his wife Mary for life, bequeathed the same one hundred and twenty acres and one hundred and thirty perches of land in deed mentioned to the three colored persons, Pomp, Tamer and Betty, using the following language, viz: " I give and bequeath to my wife Mary Nicholson, if she lives longer than me, all my land and tenements for her use, all horses and cattle of every kind, all house and kitchen furniture, and all movable property, all money, and all obligations for money, to be for her use and to be under her care while she is living, and at her death, and my death, I allow my negroes to be free, and for the service they have done I give and bequeath to Pomp, Tamer and Betty Mathers, the lower plantation where William Ramsey lived last, containing one hundred and twenty acres and sixty perches and allowance, agreeable to the lines already made, joining John Sharps and others, and none of them shall either sell nor rent said lands nor no part of it, but shall stand sure to them and their heirs, with all the buildings and improvements thereon, and when any one dies the living ones must heir their share of all property I give them." Mary Nicholson, the testator's widow, survived him ten years, dying May 4th 1839, having held and occupied the lands in the deed and will mentioned, and holding the three colored persons, Pomp, Tamer and Betty in her service and claiming them as slaves. One of three, however, Tamer, died before Mary Nicholson in 1837, aged fifty-one years. The other two continued with Mrs. Nicholson until her death, not having in her lifetime or in the lifetime of her husband claimed their freedom, but rendered to them during the lives of both the service claimed by James Nicholson. At the death of Mary Nicholson, Pompey and Betty were free from the service claimed as aforesaid and jointly took possession of the land in said deed and will.

By deed of bargain and sale, dated March 19th 1840, duly recorded, Pompey Frazier and Betty Mathers, in consideration of one hundred and twenty-five dollars, bargained and sold to William McClure, the above-named defendant, twenty-nine acres and one hundred and twenty-three perches of the land in the aforesaid deed and will mentioned, and by indenture, bearing date the 21st day of March 1840, duly recorded, conveyed in fee-simple, with general warranty of the same, twenty-nine acres and one hundred and twenty-three perches, to said William McClure, his heirs and assigns, by virtue of which deed said McClure then took possession of the same, made valuable improvements thereon, and has continued possessor thereof,

4 NORRIS—32

until now, claiming and holding the same as his own. Betty Mathers survived Pompey Frazier, who died many years since without issue.

November 5th 1840, Betty married Henry Jordan, and on August 11th 1872, she died, leaving to survive her the said Henry, her husband, and five children, her lawful issue, viz. : William Henry Jordan, her eldest son, Ruth Ann Patterson, wife of Emanuel, Martha M. Jordan, Mary E. Jordan and Joshua R. Giddings Jordon, and having in her lifetime sold and conveyed to various persons all of the remainder of said tract of one hundred and twenty acres not sold to the defendant, but about thirty acres, the greater portion of the borough of New Galilee being built thereon.

The plaintiffs, four of the five children of Betty Jordan (Mathers), all younger than William Henry Jordan, except Ruth Ann Patterson, who is the oldest child, claim to recover the four-fifths of the said twenty-nine acres and one hundred and twenty-three perches, sold by their mother and Pompey Frazier to William McClure, the defendant, in 1840, as aforesaid, alleging that said McClure took no title thereto by virtue of said conveyance.

If the court be of opinion that the title to the four-fifths of said twenty-nine acres and one hundred and twenty-three perches is in the plaintiffs, their judgment is to be entered for the plaintiffs therefor ; but if, upon examination of the deeds and will hereto annexed, and of the facts herein stated, the court shall be of opinion that the title to said land is in the defendant, then judgment to be entered for the defendant. The costs to follow the judgment, and either party reserving the right to take out writ of error therein.

The court, Hice, P. J., on April 19th 1876, rendered judgment for the defendant, to which the plaintiffs took this writ, assigning for error the entry of judgment for the defendant.

*W. S. Morlan,* for plaintiffs in error.—The deed of May 6th 1819, is a deed of bargain and sale, and raised a use to the grantees for their lives, remainder to their issue, with an estate for the lives of the grantors by implication : Cruise's Dig., p. 442, § 36, 2d Am. ed. Statute of Uses executed use in grantees, and there was then an estate for life of grantor, remainder to his wife for life, remainder to the grantees in the deed, remainder to their issue : Id. pp. 2, 34–6. A recorded deed has effect as feoffment or under Statute of Uses, as will best accomplish intention of parties : Eckman *v.* Eckman, 18 P. F. Smith 470.

The deed is in form a grant, and containing no words of revocation, is irrevocable : Eckman *v.* Eckman, *supra.* The will of October 10th 1828 does not attempt to revoke it, but was probably precautionary against a possible failure of the deed.

*Wilson & Moore,* for defendant in error.—The case stated does not admit the *delivery* of the deed. But the defendant claims that

[Jordan *et al. v.* McClure.]

it was not a deed, but a testamentary paper, revoked by the will of October 10th 1828. The test is this: whether an instrument is to take effect wholly after the death of the maker, or whether it is to go into operation as to some parts, at least, in his lifetime? In the former case the instrument is a will; in the latter a deed: 2 Bouv. Inst. 445; 1 Jarman on Wills 11–15; 1 Williams's Ex'rs 85; Redfield on Wills, pt. 1, p. 272; Powell on Devises 10. A disposition of property to take effect after the grantor's death is testamentary, and therefore revocable: Frederick's Appeal, 2 P. F. Smith 338, 341: Turner *v.* Scott, 1 Id. 126.

Mr. Justice SHARSWOOD delivered the opinion of the court, January 7th 1878.

If the instrument of writing, dated May 6th 1819, by which James Nicholson conveyed the land, of which the premises form a part, to Pompey Frazier, Tamer Frazier and Betty Mathers, falls within the principle of Turner *v.* Scott, 1 P. F. Smith 126, it was a testamentary disposition, revocable, and revoked by the subsequent will of October 10th 1828. By this will the tract was devised, after the death of the testator's widow, to whom an estate for life was given, to the same persons, Pomp, Tamer and Betty, to "stand sure to them and their heirs, with all the buildings and improvements thereon, and when any one dies the living ones must heir their share of all property I give them." We are of the opinion that, upon the proper construction of this devise, it gave to the devisees an estate in fee, as tenants in common, under the operation of the Act of 31st March 1812, with an executory devise over to the longest liver of them: Neave *v.* Jenkins, 2 Yeates 414; Coates's Street, 2 Ashm. 12; Rapp *v.* Rapp, 6 Barr 45; Nicholson *v.* Bettle, 7 P. F. Smith 384. Such being the case, the deed March 19th 1840, of the then survivors, Pomp and Betty, conveyed the fee to McClure. It is true that the survivor was not then ascertained, but it would necessarily be one or the other of them. Nothing is better settled than that, though a conveyance of an expectancy as such is impossible at law, it may be enforced in equity as an executory agreement to convey, if it be sustained by a sufficient consideration: Bayler *v.* Commonwealth, 4 Wright 37. Upon the death of Pomp, a chancellor would have decreed a conveyance by Betty to McClure. But equity is part of the law of Pennsylvania, and our courts invariably consider that as actually done which a chancellor would decree to be done. Betty, then, at the time of her death, was seised of no estate which she could transmit to her children.

But let us concede that the instrument of May 6th 1819 is distinguishable from that in Turner *v.* Scott, *supra*, that it was not a will but an irrevocable grant: Eckman *v.* Eckman, 18 P. F. Smith 460. It conveys to Pomp, Tamer and Betty, the premises "for

[Jordan *et al. v.* McClure.]

their own use during their natural life, and afterwards to their lawful, if they have any, and if not lawful issue remains after their deaths, the above described land shall revert to the lawful heirs of James Nicholson, and the said Pomp, Tamer and Betty Mathers are to take possession of said tract of land immediately after the decease of the said James Nicholson and Mary his wife, and not before, then to have full possession one or more of them during their natural life and the life or lives of their lawful issue, which land by them, or any one or more of their lawful issue shall not be allowed to rent or dispose of in any way or manner whatsoever."

If this instrument were a will and to be construed according to the principles applied in such cases, there would be great reason for holding the limitation to be that of an estate tail to Pomp, Tamer and Betsy. But it is a deed and the word " issue" will not supply the want of the word " heirs" in a deed : 2 Black. Com. 115. Lord Coke tells us, on the authority of Littleton, that if a man giveth land to a man *et exitibus de corpore suo, legitime procreatis* or *semine suo* he hath but an estate for life, for that there wanteth words of inheritance : Co. Litt. 20 b.

Taking the entire clause together we are of the opinion that it granted an estate for their lives to Pomp, Tamer and Betty, with a remainder to their children for their lives. This was of course a contingent remainder to the children, as there were none then in being. The reversion in fee was vested in James Nicholson, for a limitation to the right heirs of the grantor continues in him as the old reversion : Fearne on Cont. Rem. 50. James Nicholson devised this reversion after the death of his widow to Pomp, Tamer and Betty in fee, subject as we have seen to an executory devise over to the survivor. When it vested in them a merger of their life estate held under the deed immediately took place—of the lesser into the greater estate. No children of Pomp, Tamer and Betty had been then born—the life estate to them in remainder was still in contingency. It was destroyed by the merger, a familiar and well-settled principle : Fearne on Cont. Rem. 323. The life estate in remainder was left without any particular estate to support it and it fell. The deed to McClure then passed to him the fee.

Thus we conclude that *quacunque via data,* whether the instrument of May 6th 1819 be regarded as a will or as a deed, the title to the premises was in the defendant below.

Judgment affirmed.